**FILED**

NOV 16 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District WESTERN DISTRICT OF TEXAS |
|---|---|
| Name (under which you were convicted): RICHARD MICHAEL VANN JR | Docket or Case No.: SA-CR0061 (1) OLG |
| Place of Confinement: FEDERAL CORRECTIONAL INST. TALLADEGA, ALABAMA | Prisoner No.: 48460480 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. | RICHARD MICHAEL VANN JR. |

### MOTION          **5:23-cv-01489-OLG**

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TEXAS
   SAN ANTONIO DEVISION

   (b) Criminal docket or case number (if you know): SA-CR-0061 (1) OLG

2. (a) Date of the judgment of conviction (if you know): DEC 15 2022

   (b) Date of sentencing: December 15 2023

3. Length of sentence: 110 MONTHS

4. Nature of crime (all counts):

   COUNT 1: FELON IN POSSESSION OF A FIREARM
   COUNT 2: POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME
   COUNT 3: POSSESSION OF AN UNREGISTERED FIREARM

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐      (2) Guilty ☑      (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   N/A

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ☐      Judge only ☐

   N/A

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☑

8.  Did you appeal from the judgment of conviction?     Yes ☐     No ☑

9.  If you did appeal, answer the following:

    (a) Name of court:

    (b) Docket or case number (if you know):

    (c) Result:

    (d) Date of result (if you know):

    (e) Citation to the case (if you know):

    (f) Grounds raised:

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☑

      If "Yes," answer the following:

      (1) Docket or case number (if you know):

      (2) Result:

      (3) Date of result (if you know):

      (4) Citation to the case (if you know):

      (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐     No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a)  (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐  No ☐

(7) Result:

(8) Date of result (if you know):   N/A

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):   N/A

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐  No ☐

(7) Result:

(8) Date of result (if you know):   N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐  No ☐

(2) Second petition:   Yes ☐  No ☐   N/A

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

THAT ATTORNEY WAS INEFFECTIVE ; THAT ALLOWING THE DEFENDANT TO ENTOR INTO A PLEA AGREEMENT BEFORE REVIEWING THE EVIDENCE THAT WAS USED TO GAIN WARRANTS ON storage shed/AND HOME , THAT STEMED FROM A TRAFFIC STOP "DRUG DOG L" where a UNWARRANTED SEARCH took place, SEE (BRIEF IN support OF 2255)

(b) Direct Appeal of Ground One:   N/A
(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐   No ☐
(2) If you did not raise this issue in your direct appeal, explain why:

(c) Post-Conviction Proceedings:   N/A
(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐   No ☐
(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition:
Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:


**GROUND TWO:**


(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

THE INDICTMENT WAS LACKING THE EVIDENCE TO SUPPORT A CONVICTION, LISTED _DRUGS_, THAT WERE _NOT FOUND_ DURING SEARCH, CLAIMING HIGH GRADE MARIJUANA WAS BEING STORED, TESTING FOR C.BD. (HEMP) (GRADE), NOT HIGH GRADE) DIET PILLS WERE SAID TO BE OTHER DRUGS LISTED, (SEE _LAB REPORTS_ ATTACHED), PLEAD to defective Indictment. No 4 grams of Methamphatime were ever found. But He was charged with distributing 1-4 grams of Meth. in 924(C) COUNT. (see lab results)

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    **(1) Did you raise this issue in any post-conviction motion, petition, or application?**

        Yes ☐   No ☐

    **(2) If your answer to Question (c)(1) is "Yes," state:**

    **Type of motion or petition:**

    **Name and location of the court where the motion or petition was filed:**


    **Docket or case number (if you know):**

    **Date of the court's decision:**

    **Result (attach a copy of the court's opinion or order, if available):**


    **(3) Did you receive a hearing on your motion, petition, or application?**

        Yes ☐   No ☐

    **(4) Did you appeal from the denial of your motion, petition, or application?**

        Yes ☐   No ☐

    **(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?**

        Yes ☐   No ☐

    **(6) If your answer to Question (c)(4) is "Yes," state:**

    **Name and location of the court where the appeal was filed:**


    **Docket or case number (if you know):**

    **Date of the court's decision:**

    **Result (attach a copy of the court's opinion or order, if available):**

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

2ND ATTORNEY WAS BY WAY OF DEFAULT, HOWEVER WAS INEFFECTIVE COULD NOT PERFORM UP TO STANDARD DUE TO PLEA OF GUILT, ALLOWED HIS CLIENT TO BE SENTENCED TO A TERM OF IMPRISONMENT FOR A CONVICTION THAT WAS GAINED THROUGH EVIDENCE THAT WAS RECEIVED UNLAWFULY THROUGH EVIDENCE SEARCH OF THE TRUNK OF HIS CAR AT TRAFFIC STOP,

(b) **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐   No ☐

   (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

   (1) Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ☐   No ☐

   (2) If your answer to Question (c)(1) is "Yes," state:

   Type of motion or petition:

   Name and location of the court where the motion or petition was filed:

   Docket or case number (if you know):

   Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

I Feel the court ABUSed it's wide descreation
By denying My Motion to withdraw My guilty
Plea. After My Attorney stated He was Not
Close Assistance of Council. Do to the fact
The government withheld key report's used
iN search warrant Affidavids. Also
Bodycam footage was withheld that would
Be iN favor of Me iN a suppression Hearing

(b)  **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☐  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

      Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

      Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

      Yes ☐   No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: .

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: The grounds About The Alleged Highgrade marijuana Testing for HemP and the Alleged MethamPhatamine Being a diffrent drug where Not Brought UP Because my Attorneys withheld lab results Never saw results Until Now

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ☐  No ☑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

(b) At arraignment and plea: Niel calfas / Robbi ward

(c) At trial:

(d) At sentencing: Joel Perez
111 Soledad St, Suite 401
San Antonio, TX 78205

(e) On appeal:

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ☐   No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

    A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

        (1) the date on which the judgment of conviction became final;

        (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

        (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS


UNITED STATES OF AMERICA,
V.                                          CASE#      5:20-CR-01-OLG
RICHARD MICHAEL VANN


MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255, INEFFECTIVE ASSISTANCE
OF COUNSEL, MEMORANDUM IN SUPPORT OF RELIEF


Comes Now, Richard Michael Vann, Pro Se, respectfully requests this court, to construe this motion liberally, pursuant to Haines V. Kerner, 404, US 519: Due to him being a layman of the law, unschooled and untrained, as that of a certified Attorney at Law, therefore, should be held to a less of a standard than one, requests this court to construe this motion as it finds necessary, to ensure it is ripe, for ruling and review.


**"PROCEDURAL BACKGROUND RELEVANT TO RELIEF"**

This case was an indictment that stems from a warrantless search of the defendants car, the indictment was for, possession of a firearm by a convicted felon, possession of a firearm in furtherance of a drug trafficking crime, and possession of unregistered firearms,

1.

See Gov. Dkt. No. 3, Specifically. The defendant was charged with possessing four firearms at a storage facility, where he also allegedly, stored large quantities of marijuana, and possessing an additional firearm and firearm suppressor, as well as narcotics, at his San Antonio residence. He has been incarcerated since May 2020, this motion, comes by way of Ineffective Assistance of Counsel. Defendant will show ggod cause exists to raise this iisue, and that his rights were clearly violated by "Prosecutorial Misconduct", by withholding the report and information, that was directly related to the information that was used to gain search warrants, for the storage, as well as his home. It is being stated that the Government committed reverseable error, when they withheld the report from the auto shop traffic stop, that included the alleged, "drug deal", where law enforcement was able to state, that the back pack was full of marijuana, turned out after a unwarranted search, four grams located in the back pack, the withheld report and evidence that was presented to the Magistrate Judge, to have warrants issued for a search of the the storage, and Vanns home, that he knew (the Government) or should have knew, that withholding the evidenece would violate Mr. Vanns right to discovery, as well as to file a motion to supress the seized

2.

evidence due to it being Fruit of the Poisonous Tree, that any seized after the illegal search of his car, that lead to warrants issued for the home, and storage, defendant would at this time, request that any information, that was used to connect or lead to the convictions of defendant, be dismissed, for lack of reliable evidence, would request this court, to enter a vacation of the current federal sentence, order that he be released from the conviction, or order that at least one, hold a hearing to determine the facts, two, find that evidence that was seized from the search can not be used, three, dismiss this case, this motion comes through a 28 U.S.C. § 2255 motion for ineffective assistance of counsel, defendant will show that good cause can be proven, it will show that his attorneys performance, fell below the standard guaranteed by the 6th amendment, that when it fell below such a standard, it caused prejudice to the defendant, by not being able to withdraw his guilty plea, that was entered by way of a non-binding plea. His Attorney advised him to enter into a plea in this case, without seeing what was used to gain warrants to search the storage and home. His Attorney blames the Covid-19 pandemic, as well as no visits at the jail, and undisclosed discovery by the Government (See Attachment).

(SUPPLEMENT-4 REPORT)

3.

After new counsel was gained, a motion to withdraw his plea was filed, after being denied, his new lawyer was automatically placed into a very hard place, to try and be effective without having the option to file motions to suppress evidence, as well as to consider going to trial. He was not going to be able to right the wrongs that had took place already within this case. Under Rule 401 'relevant evidence' means evidence having tendency to make any fact that is of consequence to the determination, that the Government withholding evidence caused prejudice to the defendant. The evidence withheld from the defendant was directly related to the information that was used to get search warrants in this case. If the records were available to the defendant, a guilty plea would not have been entered in this case. Failure to disclose evidence confirming defense theory that evidence was withheld, combined with prosecutorial misrepresentations, as to the evidence not being available, as well as the presence of such evidence, was an egregious violation. See U.S. v. Alzate 47 F.3d 1103 (11 Cir 1995). Also by way of negligence of bad faith and Brady violations, by withholding evidence caused prejudice Kyles v. Whitley 115 S.Ct. 1555 (1995). When a defendent enters a plea of guilt, it is because he feels that the likelihood

4.

of conviction, with the evidence presented is high. However, if evidence that would show evidence that would determine that the way warrants were obtained should be suppressed. However, withheld evidence prevents defense from filing motions that would likely cause the evidence to be suppressed, due to anything obtained after the unwarranted traffic stop, would be Fruit of the Poisonous Tree, and not allowed to be used against the defendant. When the defendant entered into a guilty plea, he was unaware that evidence that was directly related to the warrants that was used to search his storage, and home. And if the evidence was available to the defendant, he would not have entered into the guilty plea, which due to him not being aware of the consequences of entering into the guilty plea would cause or relied on the belief that there was no evidence that would or could be used to suppress the evidence seized illegally, relied on false premises that the plea was in his best interest. However, he finds out that the withheld evidence violated due process clause and his plea should be void as involuntary. See Finch v. Vaughn, 67 F.3d 909 (11 Cir 1995). Voluntariness of a guilty plea is reviewed De Novo; When he was not advised of the effect entering into the plea without knowing that withheld evidence existed and

5.

should be reviewed for due process violations' Using Fleker v.
Thomas, 52 F.3d 907, (11 Cir 1995) modified, 62 F.3d 342 (aug (,
1995) (applying) the Kyles v. Whitley, 115 S.Ct. 1555
(1995) (materiality test) controlling cases for Brady violations.
The court has the power to order a hearing, to resolve any
misunderstading or invalid process that may be under dispute, within
this motion, that evidence was withheld that caused prejudice is one
reason, the lack of probable cause that was presented to the
Magistrate Judge, the filing of Bare Bones affidavits, that mislead
the Judge into signing a warrant that was supported by evidence that
(see, Attachment)
was obtained during the unwarranted search of his car. Also the fact
that he was indicted for one type of drug, yet the evidence did not
show that the substance was present at either place that was
searched see lab reports on marijuana which was hemp a legal
substance, pills that were caffeine were said to be meth, yet
indicted for them being 4 grams of meth. To determine if the good
faith exception to the exclusionary rule applies, if it does not we
then must ascertain whether the warrant was supported by probale
cause, United States v. Gibbs, 421 F.3d 352, 355 (5th Cir 2002). For
the purpose of the good faith exception, "we review the district

courts evaluation of the officers objective reasonableness De Novo".

United States v. Payne, 341 F.3d 393-399 (5th Cir 2003). We would

request this court to review and determine if the indictment was

based off of the warrants that were served on Mr. Vann for his house

and storage. If it is determined that the warrants were gained from

the unwarranted search of his car, then the evidence that was seized

was then used to indict, if so this case must be vacated. if the

Judge that issued the warrant was mislead by information that the

warrant was known to be gained by a illegal search by the affiant

then the search can not be upheld under the good faith exception.

It would not apply to the rule due to the knowledge of the way it

was retained without proper grounds, Leon, 468 US at 922 N.23, 104

S.Ct. 3405, "the good faith does not apply" because the officer

relied on an affidavit "so lacking in indicia of probable cause" as

to render official in its existence entirley unreasonable, id at 923,

104 S.Ct 3405. United States v. Mays, 465 F.3d 335, 343 (5th Cir

2006). In this case "wholly conclusory statements" which lack the

facts and circumstances from which probable cause can be determined,

when Mr. Vann denied consent to search the car, evrything should have

been stopped, and warrants obtained after drug dog detection or other

7.

resources to supply probable cause, not him staeing he was going to search anyways, and taking Mr.Vanns keys and searching his car, then using that evidence (see reports on auto shop traffic stop) to gain the warrants to search the other locations. The bare bones example show that where a affidavits language states that he belives that contraband is being stored. United States v. Pope 457 F.3d 912, 920 (5th Cir 2006) on the premises, such is the case here in the case in chief, they did not explain where the marijuana, and the extract was locked in a trunk and no consent to search was obtained. there was no way that the officer was able to see what was in the back pack, there was no reason for a search to take place. It appears that the Magistrate Judge was mislead by the officer where stating there was a strong smell of marijuana coming from the unit (storage) which no marijuana was found, the warrants were issued on bare bone affidavits filed with the court. It also states the C.I. used was reliable due to reliable information from a credible person. this is inadequate to provide a basis for a search. Illinois v. Gates 462 Us 213, 239, 103 S.Ct. 2317, 76 L.Ed 2d 527. When a affiant relies on a C.I., it must obtain some information of reliability sufficient to create probable cause. id at 238-39, 240-41, 103 S.Ct. 2317. The

officer failed to put this kind of information in the affidavit, the only thing that it established was the storage was his, his mother had beenn there and was seen bringing something in a duffle bag and drop it off at the storage. This type of statement of facts should not permit a warrant to be issued. No statement of facts were contained within the affidavit that were present to the court, and no warranta should have been issued. For all of the combined reasons or any one by themselves will show that a "miscarriage of justice" took place in this case, would ask this court to order a hearing to determine that his Attorney was ineffective and caused him to enter into a plea when evidence was withheld from the defense, that the warrants to search was obtained from invalid affidavit.

## CONCLUSION

Therefore, Mr.Vann respectfully requests this court to enter a judgement to vacate or set aside his conviction and sentence, and order a hearing to determine that a violation of his rights have taken place, when his Attorneys performance dropped below the standard required by law, causing prejudice by entering into a plea without all the evidence being available to the defense. With all the reasons stated above reviewed in there entirety, a judgement

granting relief to the defendant should be entered.

Respectfully Submitted,

## CERTIFICATE OF SERVICE

I swear that on this    day of   the year of 2023, this motion was signed and sent to the United States District Court for the Western District of Texas and placed in the prison legal mail system, with first-class postage affixed thereto, addressed to the Clerk of the Court for the Western District of Texas. I swear under penalty of perjury, as provided for in Title 28 U.S. C. § 1746, that the foregoing is true and correct.

/s/ Richard Michael Vann
     Defendant-Appellant

## Lack of Probable Cause/Bare Bones Affidavit/Mislead Mag.

U.S. v. Brown, 567 Fed. Appx. 272

First we determine whether the good—faith exception to the exclusionary rule applies, if it does not, we must ascertain whether the warrant was supported by probable cause." Id. at 329-30 (quoting United States v. Gibbs, 421 F.3d 352, 355 (5th Cir. 2005). For the purpose of the good—faith exception, we review the district court's evaluation of the officer's objective reasonableness De Novo. United States v. Payne, 341 F.3d 393, 399 (5th Cir. 2003).

We continue our good—faith inquiry to "the objectively ascertainable question whether a reasonably well, trained officer would have known that the search was illegal despite the magistrate's authorization" Leon 468 U.S. at 922 N.23, 104 S.Ct. 3405. The good—faith exception does not apply, and the officer may not merely rely on the magistrate judge's determination of probable cause, when "the officer [does not have] reasonable grounds for believing that the warrant was properly issued. Id. at 922-23 104 S.Ct. 3405. The exception therefore does not apply, and suppression is the appropriate remedy where: (1) the magistrate or Judge who issued the warrant "was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. (3) The officer relied on an affidavit "so lacking in indicia of probable cause as t render offical in it's existence entirely unreasonable. Id. at 823, 104 S.Ct. 3405 United States v. Mays, 466 F.3d 335, 343 (5th Cir. 2006).

Here, a reasonably well trained officer would have known that the search of Vann's house and storage was based on insufficient evidence of probable cause. Not to mention the illegal search of Vann's locked vehicle at the Culebra Auto Shop (where he gave no consent), and therefore was a violation of Vann's fourth amendment rights. The affidavit was "so lacking in indicia of probable cause as to render official belief in it's existence entirely unreasonable. Also the Magistrate or Judge who issued the warrant "was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. It was a

1.

"bare bones" affidavit, containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." United States v. Satterwhite, 980 F.2d 317, 320-21 (5th Cir. 1992). "generally, examples of bare bones affidavits include those that merely state that the affiant has cause to suspect and does believe or has recieved reliable information from a credible person and does believe that contraband is located on the premises. "United States v. Pope, 467 F.3d 912, 920 (5th Cir. 2006).

Such is the case here. DET Bishop left out key details that would have better informed the magistrate of the incident. DET Bishop did not specify where they found the high grade Marijuana and the extract that was locked in Vann's truck and stemmed from a no consent illegal search. Or how officers observed Vann in possession of a back-pack that contained Marijuana before he was even contacted by police officers. How do they know what's in the back-pack?

Bishop also mislead the magistrate by saying Richard Vann was witnessed on several occasions, using his grey Audi A3 to meet briefly with unknown people in various business parking lots, conducting drug deals and then going directly back to his house. But in the SAPD supplementary report case# 19095314 based on the probable cause set out in paragraphs 1-6, a search warrant was applied for to search Richard Vann's residence. 6 a-g never confirms a drug deal no hand on hand transactions, no "controlled buy". The only thing captured on surveillance was Vann meeting with unknown people, no confirmation of any illicit drugs. In fact the only actual illegal drugs ever found by police in this entire investigation prior to the search of the residence and the shed derives from the illegal search of Vann's vehicle on May 6, 2019.

It can also be said Bishop mislead the magistrate Judge by stating "on this date May 6, 2019 agents also went to the storage to investigate, and again smelled a strong odor of Marijuana coming from the unit. Agents recognized the odor through their training and experience as a police officers and narcotics investigators. When the warrant was executed for the storage unit no Marijuana or Marijuana related paraphernalia where located. Only 4 firearms 8-a-d. Vann and

2.

Vann's residence were detained making it impossible to move any Marijuana from storage. This should discredit the odor of Marijuana being used as probable cause through out the affidavit for search warrant. If Bishop did not know any of this information to be false, he should have known except for his reckless disregard of the truth.

"An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the mere statement that the affiant "received reliable information from a credible person" is inadequate to provide such a basis. Illinois v. Gates 462 US. 213, 239, 103 S.CT. 2317, 76 L.Ed. 2d 527. When an affaint relies upon info obtained from an informant, the affiant must provide sufficient info to allow the magistrate to determine by reviewing the totality of the circumstances, whether the informant's information is sufficiant to create probable cause. Id at 238-39, 240-41, 103 S.Ct. 2317. Bishop failed to provide such info in his affidavit. The information verified were basic fact's where Vann lived, what car Vann drove, the fact that Vann had a storage anyone that knew Vann could of told you these things. The fact Vann and Adrianna Vann where witnessed taking items to a storage unit should not stand for credibility to so called credible informant. Bishop also failed to state the fact that the credible informant was Alexis Suliemen Vann's drug addicted girl friend who was angry about a recent brake up she had with Vann.

Moreover, the affidavit provided no information linking the drug-trafficking investigation to Vann's residence. "Facts in the affidavit must establish a nexus between the house to be searched" and the evidence sought. The nexus may be established through direct observation or through normal inferences as to where the articles sought would be located. Bishop failed to provide such information in his affidavit to search Vann's residence.

Your affiant believes, it is the belive of affiant and there is likely more evidence. We have held that such bare-bones statements cannot support the good-faith exception. See Pope, 467 F.3d at 920; United States v. Brown 941 F.2d 1300, 1303 h 1 (5th Cir. 1991). Example of bare-bones affidavits includes one that states the affiant "has cause to suspect and does believe" and where the affiant's have

recieved reliable information from a credible person and do believe. Moreover, Bishop provided no specific facts that would allow the magistrate to conclude that there was a fair probability that drugs would be found in Vann's residence itself. Rather, in the affidavit, Bishop made only a bare-bones assertion that it was believed that drugs would be found in the residence. Considered in totality, the affidavit which failed to provide specific facts as to the credibility of the informant, Bishop's investigation into Vann's trafficking activities and the residence— was insufficient to allow the magistrate to assess whether there existed probable cause to search Vann's storage unit or residence.

### Search Warrant, Affidavit Clairvoyant and Conclusory Statement

The search warrant affidavit's utilize clairvoyant and conclusory statements to describe their surveillance prior to May 6, 2019 with terms such as "conducting drug deals" and "it appeared..." the defendant was conducting drug deals without any actual confirmation of any illicit drugs. Thereafter on May 6, 2019 the police stated that they "observed" [the defendant] in possession of a back-pack that contained Marijuana, from a distance and that "your affiant believes" ...Rchard Vann is actively using his residence...and his storage to base his drug operation...All these speculative and conclusory statements demonstrate on their face the lack of articulatible facts for probable cause.

### Defective Indictment/Guilty Plea

The 8.2 ponds of alleged high grade Marijuana, the primary offense (Poss 5-50 pounds) in the initial investigation done by SAPD and the 8.2 pounds of Marijuana named in count 2 (924(c)) of my federal— indictment was Hemp which differs from Marijuana and is not illegal in the state of Texas. As stated by forensic Scientist in the drug indentification report. Item 1-8 8.2 lbs. of alleged high grade Marijuana contained such low amounts of THC the laboratory could not quantify the percentage of THC basically saying it's not even considered Marijuana by federal or Texas statute. On these facts alone since I was charged in count 2 924(c), possession of a firearm in furtherance of a drug trafficking crime being the possession 5-50

pounds of Marijuana the other being 4-200 grams w/intent Methamphetamine (also the record will show there's no 4 grams of Methamphetamine). I plead to a defective indictment on the fact that I did not traffic nor possess the 5-50 pounds of high grade Marijuana as accused in count 2 of the indictment. I obviously plead into a guilty plea not knowing the fact's of the case. I was never shown all the evidence against me until now (after conviction). I never saw much of anything threw out pre-trial, suspectly because the whole case was faulty. Knowing the facts of the case i would have never signed guilty because I'm not guilty as the records show. I also feel ineffective counsel plays a factor in this case after having 4 different Attorney's none showed me these lab results showing the results for the alleged 8.2 pounds of high grade Marijuana ultimately being Hemp and the contradicting field tests for the non-existing 4 grams of Methamphetamine.

   In count 2 of the indictment (924 c) I was convicted of trafficking Methamphetamine. SAPD police report state's approximately 4.0 grams of alleged Methamphetamine were located in my bedroom and yielded a positive field test on the scene, but when the loose brown crystalline substance was tested in the lab (see drug Identification report Item 1-2-1) it was positive for 3,4- Methylenedioxy Methamphetamine AKA Molly. A different drug altogether. A penalty 2 group controlled substance. So there was no 4 grams of Methamphetamine officers mistakenly assumed the brown loose crystalline substance was Methamphetamine but still charged me. They also state in the SAPD police report that 21.7 grams of MDMA (ecstasy pills) were recovered and were positive for MDMA field test on the scene, but when these same ecstasy pills were tested in the lab they were no longer MDMA but Methamphetamine contradicting the positive filed test on the scene for MDMA. No where in the indictment or the discovery does it state I'm being charged with Methamphetamine pills. It says I was distributing grams of Methamphetamine. How was the Meth accurately weighed? I know these pills contained no Meth, but since officers had already mistakenly assumed the brown loose crystalline substance to be Meth and charged me in an attempted to withhold the 924(c) count they are saying the MDMA pills (that yielded a positive field test on the scene for MDMA) are now Meth. The bexar county criminal investigation laboratory report proves both drugs 5-50 pounds of

Marijuana and 4-200 Methamphetamine in count 2 of the indictment were bogus, making it impossible to distribute these drugs.

## EXHIBITS....

EXHIBIT 'A'................BRADY DISCOVERY/WITHHELD POLICE REPORT

EXHIBIT 'B'................DRUG IDENTIFICATION REPORT. 3 PGS.

EXHIBIT 'C'................REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY..6.PGS.

EXHIBIT 'D'................AFFIDAVIT FOR SEARCH WARRANT..4.PGS.

EXHIBIT 'E'................SAPD FIELD TEST

EXHIBIT 'F'................SAPD POLICE REPORT.PGS 4&5 OF 6.

EXHIBIT 'G'................AFFIDAVIT OF NEIL CALFAS..2.PGS.

EXHIBIT 'A'



San Antonio Police Department

## Report # SAPD19095314 - Supplement - SUPPLEMENT-4 Report

| REPORT DATE / TIME | PRIMARY REPORTER |
|---|---|
| May 14, 2019 14:00 | Legacy Hexagon Data Migration |

### NARRATIVE

On 5/6/19 surveillance was conducted on VANN, RICHARD who is a known narcotics trafficker and convicted felon. Rolling surveillance was maintained on the VANN, RICHARD and his girlfriend where we followed them to the above address where they parked on the back side of the building facing the dumpster, which is in the rear of an automotive shop in this shopping center. I positioned myself where I had a view of the VANN, RICHARD's vehicle. I observed the VANN, RICHARD meet with several other males behind that location. I saw VANN, RICHARD get a black backpack out of the back seat of his vehicle. The VANN, RICHARD opened the backpack and pulled out a clear bag containing marijuana, reach into the clear bag and pulled out some marijuana and handed it to a black male he was meeting with. The black male smelled it and walked out of my view. The VANN, RICHARD then put the backpack back inside the rear passenger seat of his vehicle. After a short time the VANN, RICHARD and his girlfriend appeared to be getting ready to leave the location. Before the VANN, RICHARD got back into the vehicle he removed the backpack from the back seat and put it in the trunk of the vehicle. The VANN, RICHARD and the other males were then contacted there by police officers and detained before they were able to leave. While at this location the VANN, RICHARD was observed mouthing the words "CALL MY MOM" to someone who was at the automotive shop. The VANN, RICHARD's mother had previously moved the VANN, RICHARD's narcotics to a storage facility after a previous arrest and we were concerned that if someone called her she would attempt to hide or destroy evidence again. Myself and other detectives responded to the VANN, RICHARD's residence as quickly as we could to establish surveillance on his house until the search warrant could be signed. During the surveillance a female, as well as the VANN, RICHARD's brother, and mother were observed leaving VANN, RICHARD's residence. All were eventually stopped and detained and the search warrant was executed once it was signed. I assisted with securing the residence and searching VANN, RICHARD's residence.

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| KYLE WILLIAMSON #3382    May 14, 2019 14:00 (e-signature) | Legacy Hexagon Data Migration    May 14, 2019 14:00 (e-signature) |
| PRINT NAME | PRINT NAME |
| KYLE WILLIAMSON #3382 | Legacy Hexagon Data Migration |

**San Antonio Police Department**

Mark43 RMS Form v2.0 generated by C. BISHOP #2311 on Nov 16, 2021 13:23.
Imported Report.

Pg 1 of 1

EXHIBIT B 3495



# BEXAR COUNTY
# CRIMINAL INVESTIGATION LABORATORY

7337 Louis Pasteur
San Antonio, TX 78229-4565
Office: (210)335-4100
Fax: (210)335-4101



## DRUG IDENTIFICATION REPORT

June 28, 2019

Detective Antonio Garcia
San Antonio Police Department
315 South Santa Rosa
San Antonio, TX 78207

**CIL Case #:**      19-03568
**Case Record #:**   1
**SAPD Case #:**     19095314
**Suspect(s):**
    Shyheim Manning
    Adrianna Vann
    Dallas Vann
    Richard M. Vann
*Possession of a Controlled Substance*

## EVIDENCE RECEIVED:

*Submission #1*
Evidence received from Detective Allen Johnson, San Antonio Police Department, on May 10, 2019.

1:   One tape sealed cardboard box containing:
1-1:   One manila envelope (Vann, Richard) containing one ziplock bag containing:
1-1-1:   One small ziplock bag containing:
1-1-1-1:   Fifteen multi colored round pills, one pill was tested (Star logo imprint).
1-1-1-2:   Seven multi colored round pills, one pill was tested (Thunder Cloud logo imprint).
1-1-1-3:   Seven multi colored round pills, one pill was tested (MudFlap Girl logo imprint).
1-1-1-4:   Six multi colored round pills, one pill was tested (Clover leaf logo imprint).
1-1-1-5:   Five multi colored round pills, one pill was tested (Mask logo imprint).
1-1-1-6:   Five multi colored round pills, one pill was tested (Bitcoin & Thunder Cloud logo imprints).
1-1-1-7:   Four multi colored round pills, one pill was tested (Radiation logo imprint).
1-1-2:   Two small ziplock bags each containing numerous multi colored round pills, not inventoried and not tested.
1-2:   One manila envelope (Vann, Richard) containing one small ziplock bag containing one small ziplock bag containing:
1-2-1:   A loose brown crystalline substance.
1-2-2:   Six clear capsules each containing a brown crystalline substance, not tested.
1-3:   One manila envelope (Vann, Richard) containing one small ziplock bag containing:
1-3-1:   Eight ziplock bags each containing a white powdery substance, six ziplock bags were tested.
1-3-2:   One tied corner plastic bag and one clear capsule each containing a white powdery substance, not tested.
1-4:   One tape sealed manila envelope (MANNING, SHYHEIM) containing:
1-4-1:   One manila envelope (Item #E2) containing one tied corner plastic bag containing a white powdery substance.

Page 1 of 3

## BEXAR COUNTY CRIMINAL INVESTIGATION LABORATORY
### DRUG IDENTIFICATION

CIL Case # 19-03568
June 28, 2019

1-4-2:   One manila envelope (Item #E1) containing one vacuum sealed plastic bag containing two vape pen cartridges each containing an amber oily substance, one cartridge was tested.

1-5:   One manila envelope (VANN, Dallas; VANN, Adriana; Vann, Richard) containing:

1-5-1:   One large ziplock bag (VANN, Dallas) containing forty five USB type vape pen cartridges each containing an amber oily substance, seventeen cartridges were tested.

1-5-2:   One vacuum sealed plastic bag (Vann, Richard Michael Jr), not inventoried and not tested.

1-5-3:   One vacuum sealed plastic bag (VANN, ADRIANA), not inventoried and not tested.

1-5-4:   One vacuum sealed plastic bag (VANN, DALLAS), not inventoried and not tested.

1-6:   One manila envelope (Vann, Richard) containing one large ziplock bag containing:

1-6-1:   One ziplock bag containing five folded wax papers each containing an amber waxy substance, one wax paper was tested.

1-6-2:   One ziplock bag (Vann, Richard), not inventoried and not tested.

1-7:   One manila envelope (VANN, RichARd) containing eight ziplock bags each containing a green resinous substance, one ziplock bag was tested.

1-8:   Three taped brown paper bags (VANN, RICHARD), two paper bags each containing a tied plastic bag containing a plant material were tested.

1-9:   One ziplock bag (VANN, DALLAS) containing a plant material, not tested.

### RESULTS AND CONCLUSIONS:

Item 1-1-1-1: Mass: 3.192 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-1-1-2: Mass: 1.316 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-1-1-3: Mass: 1.56 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-1-1-4: Mass: 1.285 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-1-1-5: Mass: 1.142 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-1-1-6: Mass: 1.098 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Caffeine.

Item 1-1-1-7: Mass: 0.847 gram(s) total weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Methamphetamine.

Item 1-2-1: Mass: 1.479 gram(s) net weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for 3,4-Methylenedioxymethamphetamine.

Item 1-3-1: Mass: 1.144 gram(s) net weight - Uncertainty +/- 0.010 gram(s) at a 95% Confidence Interval Positive for Cocaine.

**BEXAR COUNTY CRIMINAL INVESTIGATION LABORATORY**
**DRUG IDENTIFICATION**

CIL Case # 19-03568
June 28, 2019

Item 1-4-1: Mass: 0.022 gram(s) net weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Cocaine.

Item 1-4-2: Mass: 0.229 gram(s) net weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Delta-9-Tetrahydrocannabinol.

Item 1-5-1: Mass: 4.343 gram(s) net weight - Uncertainty +/- 0.016 gram(s) at a 95% Confidence Interval Positive for Delta-9-Tetrahydrocannabinol.

Item 1-6-1: Mass: 20.71 gram(s) net weight - Uncertainty +/- 0.04 gram(s) at a 95% Confidence Interval Positive for Delta-9-Tetrahydrocannabinol.

Item 1-7: Mass: 15.242 gram(s) net weight - Uncertainty +/- 0.004 gram(s) at a 95% Confidence Interval Positive for Hashish.

Item 1-8: Mass: 8.2 lbs gross weight - Uncertainty +/- 0.3 lbs at a 95% Confidence Interval Positive for Cannabis containing Cannabidiol and Delta-9-Tetrahydrocannabinol.

**REMARKS:**
Item 1-8: Marijuana" differs from "low-THC cannabis" or "hemp" based upon the percentage of tetrahydrocannabinols (THC) and cannabidiol (CBD) present in the material as defined by federal and/or Texas statute.  This laboratory currently cannot quantitate the percentage of THC or CBD present and therefore cannot determine potency.

**Reported By:**

*Yvette Holt Pirkle*

Yvette Holt Pirkle
Forensic Scientist

EXHIBIT "C" (7)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| vs. | § | SA20CR0061(1)OLG |
| RICHARD MICHAEL VANN JR. | § | |

**SEALED REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE FOR THE WESTERN
DISTRICT OF TEXAS: SAN ANTONIO DIVISION:

Now comes Defendant, RICHARD MICHAEL VANN JR., and files this his Sealed Reply

to Government's Response in Opposition to Defendant's Motion to Withdraw his Plea of Guilty

and request for a hearing, and would respectfully show the Court as follows:

***REPLY TO GOVERNMENT'S ARGUMENTS***

1. A) The Government argues that the "Defendant's Claim of Innocence is Threadbare."

   The Defendant submits that he is legally innocent. The COVID 19 pandemic is a once

   in a lifetime event that caused extraordinary measures to be implemented in order to

   avoid transmissibility.  The precautionary measures implemented to protect and avoid

   transmissibility included closing down courtrooms, not transporting defendants, and

   no visitation with defendants. These measures created extraordinary circumstances

   that impeded the normal functioning of the court system and, to a greater extent, the

   attorney-client interaction. The Defendant in the instant case had not met his

   attorneys in person, nor had he read or been shown the police reports and search

   warrants and affidavits at the time of his plea of guilty. The Defendant was therefore

not familiar with inconsistencies contained therein and the lack of probable cause in the search warrant affidavits.

B) The search at the "Culebra Auto Shop Arrest" is directly related to the federal case. In fact, in the Defendant's factual basis for his plea agreement, the Government states that on "May 6, 2019, SAPD officers observed the Defendant making a drug deal… in the parking lot of a business…" (the Culebra Auto Shop Arrest). Thereafter, the Government, in the factual basis states that "[b]ased upon these observations," especially and including the Culebra Auto Shop Arrest, on May 6, 2019 "SAPD officers applied for and received a search warrant for Defendant's residence." Additionally, "SAPD officers also applied for and received search warrant for Defendant's storage unit…" Furthermore, the evidence is such that on May 6, 2019, immediately after the illegal search of the vehicle, the SAPD officers went directly to the residence and detained individuals there prior to the application for and signing of the search warrants for the residence and the shed. Therefore, the Culebra Auto Shop Arrest is directly and intricately intertwined with the search of the residence and the storage shed the subject of the federal charges herein. (See Exhibits A, B, and C) The police utilized the illegal search of the vehicle as the probable cause to obtain the search warrants of the residence and the storage shed. The illegal search of the vehicle is the "fruit of the poisonous tree" that invalidates the subsequent unlawful searches of the residence and the storage shed. In particular, the search warrant affidavits utilize clairvoyant and conclusory statements to describe their surveillance, prior to May 6, 2019, with terms such as "conducting drug deals," and "it appeared…" the Defendant was conduction drug deals without any actual

confirmation of any illicit drugs. Thereafter, on May 6, 2019 the police state that they "observed [the Defendant] in possession of a backpack that contained marijuana," from a distance and that "your affiant believes …Richard Vann is actively using his residence…and his storage to base his drug operation…" All these speculative and conclusory statements demonstrate on their face a lack of articulable facts for probable cause to the search of the residence and the storage shed. **In fact, the only actual illegal drugs ever found by the police in this entire investigation, prior to the search of the residence and the shed, derives from the illegal search of the Defendant's vehicle on May 6, 2019.** Therefore, the illegal search of the vehicle is what launched the search of the residence and the shed. The newly discovered report discloses the lack of articulable facts to search the vehicle at the Culebra Auto Shop Arrest. The discovery at the Culebra Auto Shop Arrest is subsequently used in the search warrant affidavits to search the residence and the shed. The totality of the circumstances in the instant case is sufficient to meet the *Carr* factors.

2. The Government's next argument is that the "Defendant Unreasonably Delayed Filing His Motion to Withdraw his Plea." In the instant case, the Defendant's request to withdraw his plea is not an eleventh-hour request. To the contrary, once the Defendant was enlightened after actually reviewing the evidence, in particular the search warrants, he requested his second set of attorneys to withdraw his plea. The Defendant entered his plea of guilty on March 4, 2021. Thereafter, he familiarized himself with the police reports and search warrants and began to request his second set of attorneys to file a motion to withdraw his plea. His second set of attorneys refused to file a motion to withdraw his plea. The Defendant's second set of attorneys

instead chose to file a motion to withdraw as his attorneys instead of filing his motion to withdraw his plea. The second set of attorneys' refusal to file his motion to withdraw his plea when requested by the Defendant should not weigh against the him.

3. The Government then argues that the Withdrawal of the Defendant's Plea Inconveniences the Court and Wastes Judicial and Prosecutorial Resources. The Defendant asserts and submits in his motion to withdraw his plea of guilty, in great part, because he is legally innocent. The Defendant submits that the search of his vehicle was illegal. The illegal search of the vehicle is the "fruit of the poisonous tree" that leads to the illegal search of his residence and storage shed. Therefore, the Defendant's specific request for relief would be the ability to contest the illegal search of his vehicle, residence, and storage shed. A hearing on a motion to suppress is a simple matter of law issue and would not prejudice the Government's investigation and not inconvenience the Court to the degree the Government asserts. *Surely the court would not want the Defendant to plea Guilty to a charge that he would not plea guilty to, due to the searchs being the only done.* If the Defendant were to fail is such attempt at a motion to suppress hearing, the Defendant will waive a nonjury or jury trial. Consequently, the Government's arguments on this issue are moot.

4. Lastly, the Government argues that the "Defendant's Plea was Knowing, Voluntary, and Under Close Assistance of Counsel."

   a. In the instant case, the Defendant submits to the Court that his plea of guilty was indeed "unknowingly" entered and that he lacked close assistance of counsel. (See Exhibit D) The Defendant's guilty plea was entered at a time during which the COVID restrictions interrupted the normal communications with counsel that led to the Defendant not knowing the specific contents of the

search warrants. His second set of attorneys had not shown him the search warrants and indeed, not even the police reports and thus the Defendant lacked close assistance of counsel. (See Exhibit E) The lack of close assistance of counsel should be enough for the Defendant to withdraw his plea.

b. The Government asserts that newly discovered report regarding the Culebra Auto Shop Arrest is unrelated to the federal charges to which the Defendant pleaded guilty. The opposite is true, the Defendant's second set of attorneys specifically asked the Government for reports of the arrest of the Defendant and search of the vehicle at the Culebra Auto Shop Arrest. The Government informed the second set of attorneys that the officer reported back that no reports were written regarding the Culebra Auto Shop Arrest. Therefore, either the officer recklessly, or otherwise, did not submit the report when previously requested for it by the Government at the request of the Defendant's second set of attorneys, or it was recently fabricated by the officer pursuant to the undersigned counsel's last request. Therefore, the newly discovered report sheds light on the credibility of the illegal search of the vehicle, the fruit of the poisonous tree that leads to the illegal search of the residence and the storage shed that are the substance of the federal charges herein. In addition, the Culebra Auto Shop Arrest is utilized by the police as probable cause, without articulable facts, to further launch their investigation and search the residence and the storage shed. As such, the newly discovered report is intricately intertwined to the federal charges in the instant case.

    c.  The Government asserts that the Defendant expressly waived any claims to additional discovery, however, the Defendant submits that, under the totality of circumstances standard, the additional discovery raises Fourth Amendment issues that rise to the level of a "fair and just reason" for withdrawal of his plea.

## **CONCLUSION**

The Defendant submits that the *Carr* totality of circumstances standard has been met here by the Defendant and that there is a "fair and just reason" to grant the Defendant's request to withdraw his plea.

WHEREFORE PREMISES CONSIDERED the Defendant RICHARD MICHAEL VANN JR., prays that the Court grant his request for a hearing and grant his Motion and for such other and further relief as it shows itself justly entitled.

                    Respectfully Submitted,

                    /S/_____
                    JOEL PEREZ
                    111 Soledad St., Suite 401
                    San Antonio, Texas 78205
                    (210) 222-1888
                    (210) 579-9304
                    State Bar No. 15776625

EXHIBIT U-41qs

**State of Texas**    #   **191664**    **Number:** _____

**County of Bexar**                                          **In the Municipal Court**

## Affidavit for Search Warrant

The undersigned Affiant, San Antonio Police Det. C. Bishop #2311 , being a Peace Officer under the laws of the State of Texas and being duly sworn, on oath, makes the following statements and accusations:

- There is in Bexar County, Texas, a suspected Place described as follows:

    Storage unit #2200, located at Life Storage, 23860 US Hwy 281 North, Bexar County, Texas 78258.

- There is in this suspected Place items constituting evidence that the offense of Possession of Marijuana , in violation of Section 481 of the Health and Safety Code of the State of Texas, has been committed, and said evidence is described as follows:

    Any and all marijuana and any paraphernalia related to the possession and/or distribution of marijuana.

- It is the belief of your Affiant that the offense of Possession of Marijuana was committed on or about the 6th day of May, 2019 in Bexar County, Texas.

- Your Affiant has probable cause for said belief by reason of the following facts:

    In mid-April 2019, the San Antonio Police narcotics unit received a tip about narcotics trafficking and illegal firearms possession. According to a credible informant, an individual named Richard Michael Vann was trafficking multiple pounds of marijuana and Tetrahydrocannibol (THC) extract through commercial airlines. In addition, the informant added that he was storing illegal firearms, marijuana, and THC extract (PG2 substance) at his residence and a nearby storage unit. According to the informant, Vann resided at 27403 Trinity Cross, Bexar County, Texas, 78260. The informant also described that Vann used a grey, 2015 Audi A3 to transport and distribute drugs throughout the city. The informant also mentioned that his mother, Adriana Vann and brother Dallas Vann also helped Richard facilitate his drug trafficking.

    Based on this information, a narcotics investigation was initiated to determine the validity of the informants tip. As part of the investigation, research was conducted to verify the information received. It was confirmed through covert surveillance that Richard Vann did in fact reside at 27403 Trinity Cross and that he did operate a grey 2015 Audi A3. It was also confirmed that his mother Adriana Vann and brother Dallas Vann also resided there. Richard Vann, Adriana Vann, and Dallas Vann were observed on multiple occasions demonstrating control of the residence. Richard Vann was arrested for a warrant while at the residence on April 25, 2019, by Bexar County Sheriff's Deputies, further showing his established residency.

    Richard Vann was witnessed on several occasions, using his grey Audi A3 to meet briefly with unknown people in various business parking lots, conducting drug deals and then going directly back to his house. During this time, he was also observed going to a storage unit, located at 23860 US 281 North, Bexar County, Texas 78258 briefly, as described by the informant. After leaving the storage unit, narcotics agents went to inspect, and could smell a strong odor of marijuana from inside the unit while standing outside the unit. It should also be noted that Adriana Vann was observed taking items from their residence to the storage unit immediately after Richard Vann's April 25th arrest. At that time, an inspection was done and a strong odor of marijuana was detected as well. These observations added to the reasonable suspicion that Richard Vann and Adriana Vann were indeed involved in drug activity. It appeared that the storage unit was a stash location for marijuana.

**State of Texas  #  1 9 1 6 6 4**                     **Number:** _____

On this date, May 6, 2019, Richard Vann was observed leaving his residence with a female named Madison Delozier. They were followed in undercover police vehicles throughout the city and to a business located at 8509 Culebra Road. While at the business, Richard Vann was witnessed meeting up with another male in the parking lot. He was observed in possession of a backpack that contained marijuana. It appeared that he was making a drug deal in the parking lot of the business as witnessed on previous occasions. To further investigate, police officers made contact with Richard Vann and found him possession of high grade marijuana, a felony amount of Tetrahydrocannibinol (THC) extract, a Penalty Group 2 controlled substance, and illegal prescription pills. The male he was meeting with was also in possession of marijuana in addition to an assault rifle.

On this date, agents also went to the storage to investigate, and again smelled a strong odor of marijuana coming from the unit. Agents recognized the odor through their training and experience as a police officers and narcotics investigators.

Your Affiant believes that based on the facts and circumstances listed above, Richard Vann is actively using his residence at 27403 Trinity Cross and his storage unit at 23860 US 281 North to base his drug operation from, while his mother Adriana Vann helps to facilitate his deals. I believe there is likely more items of evidence that will show that Richard Vann knowingly and intentionally possessed marijuana.

• Your Affiant believes a search of the above described suspected Place for the above described item(s) will constitute evidence that the offense of Possession of Marijuana was committed on or about May 6, 2019  in Bexar County, Texas.

• Your Affiant further believes that the specific offense of Possession of Marijuana has been committed and that the item(s) described above, constituting evidence to be searched for and seized, are located in the suspected Place.

**State of Texas**      #   1 9 1 6 6 4              **Number:** _____

Wherefore, your Affiant asks for the issuance of a Warrant that will authorize the search of the suspected place, and the seizure of the above described evidence.

Respectfully Submitted,

Signature of Affiant        *C Bishp  #2311  SAPD*

Sworn to and subscribed before me in person

this 6th day of May 2019

hour of 5:35Pm        Signature of Municipal Court Judge
Bexar County, Texas

Michael Ramos

State of Texas     # **1 9 1 6 6 4**     Number: _____

County of Bexar                      **In the Municipal Court**

## Search Warrant

The State of Texas, to the Sheriff or any Peace Officer of Bexar County, Texas, or any Peace Officer of the State of Texas,

Greetings:

Whereas the Affiant whose signature is affixed to the Affidavit attached hereto did therefore this day subscribe and swear to said Affidavit before me, which is hereby incorporated herein for all purposes, and whereas I find that the facts stated by the Affiant in said Affidavit show that the Affiant has probable cause for the belief he expresses herein and establishes the existence of proper grounds for the issuance of this Warrant.

You are now therefore commanded to proceed to:

> Storage unit #2200, located at Life Storage, 23860 US Hwy 281 North, Bexar County, Texas 78258.

and to enter and search said location for the following items found therein, including, but not limited to:

> Any and all marijuana and any paraphernalia related to the possession and/or distribution of marijuana.

Herein fail not, but have you then and there execute this Warrant within three days, exclusive of the day of its issuance and execution, with your return thereon, showing how you have executed the same.

Issued on this the ____ day of ____ ,

2 ol 9 at the hour of 5:35 pm

_____
Signature of Municipal Court Judge
Bexar County, Texas

Michael Ramos



**POLICE REPORT**

## San Antonio
## Police Department

| Offense Case # SAPD10095314 | Incident Type POLICE REPORT | CFS Number SAPD-2019-0537946 |
|---|---|---|
| Primary Offense POSS MARIJ 5LBS TO 50 LBS | | Page 7 of 8 |
| Date / Time Occurred 5/6/2019 13:45 to 5/6/2019 14:00 | | Date / Time Reported 5/6/2019 22:00 |

Both locations have been affirmatively linked to AP, who had demonstrated his care, custody and control.

During the execution of the search warrant at the residence, the following items were discovered:

1. Approximately 11.5 lbs of high grade marijuana. This was located in AP's bedroom. Several personal items belonging to him were found in the room, affirmatively linking him to the marijuana. He was advised of his Miranda Rights, at which time he admitted that it was his bedroom. It was recognized as marijuana through agent's training and experience.

2. Approximately 21.7 grams of MDMA, ecstasy pills (PG2). This was located in AP's bedroom. It yielded a positive field test.

3. Approximately 124.3 grams of hashish (PG2). This was located in AP's bedroom. It yielded a positive field test.

4. Approximately 3.9 grams of alleged cocaine (PG1). This was located in AP's bedroom, affirmatively linking him to it. It yielded a positive field test.

5. Approximately 4.0 grams of alleged methamphetamine (PG1). This was located in AP's bedroom. It yielded a positive field test.

6. Approximately 127 grams of THC extract (PG2). This was located in the kitchen refrigerator. This was located in a common area and could not be affirmatively to any person(s).

7. Approximately 1.2 grams of marijuana. This was located in SP1's bedroom. Agents recognized it as marijuana through training and experience.

8. Approximately 161.8 grams of marijuana. This was located in SP2's bedroom. SP2 admitted possession of it as well.

9. Approximately 5.1 grams of THC extract (PG2). This was located in SP2's bedroom.

10. Approximately 47 grams of THC vape cartridges (PG2). This was located in SP2's bedroom.

11. Glock Model 17, 9mm handgun, serial #BBVL330. This was located in AP's bedroom.

12. $71,225.00 US currency. $2,000 was found in SP1's nightstand drawer and $61,225.00 was found concealed in a bench at the foot of SP1's bed. SP1 stated that she was unaware of any concealed currency.

During a search of the storage unit, the following items were discovered:

13. Smith & Wesson, M&P Shield 9mm handgun. Serial number #JHJ6305.

14. Mossberg Maverick 12 gauge shotgun. Serial number #MV067744.

15. AK47 assault rifle, Model AK47-63. Serial number #177062

16. Panther Arms AR-15 assault rifle. Serial number #DKF500857

AP was in possession of a total of 7.9 grams of a Penalty Group 1 substance, 146 grams of a Penalty Group 2 substance, and 11.5 pounds of marijuana. The way the Penalty Group 1 substance was packaged in individual baggies indicate his intent to distribute. Additionally, the mere amount of Penalty Group 2 substances in his possession shows his intent to distribute.

It should be noted that AP is a convicted felon, and is in violation of PC 46.04 by possessing a firearm before the fifth anniversary of his release from confinement. Weapons charges may be filed at a later date pending further investigation.

AP was transported to 401 S. Frio and booked for Poss CS W/I Del CS Pg1, 4-200 grams, Poss W/I Del CS Pg2, 4-400 grams,

**PAGE 4 of 6**          **SAN ANTONIO POLICE DEPARTMENT**          **CASE NUMBER: SAPD19095314**

POSS W/I DEL CS PG 1, 4-200 grams
POSS W/I DEL CS PG 2 4-400 grams
POSS Marijuana 5-50 pounds

| Last name of Complainant, First, Middle Initial<br>Det. A. Garcia #2362 | Address of Complainant<br>315 S. Santa Rosa | | Phone Number<br>210-207-2470 |
| --- | --- | --- | --- |
| Place of Occurrence-Street on- at or Number<br>27403 Trinity Cross | Dist. Occurrence<br>Bexar Co. | Date & Time of Occurrence<br>05/06/2019 1:40 pm | Date and Time of this Report<br>05/15/2019 08:00 am |

Additional Detail of Offense-Progress of Investigation-Disposition of Evidence, Property. Etc...

a.  April 25, 2019. Adriana Vann accessed the storage unit shortly after Richard Vann was arrested. She was observed taking duffle bags into the unit. After Adrianna accessed the unit, narcotics agents inspected the exterior of the storage unit, and could smell a strong odor of marijuana coming from the inside.
b.  April 26, 2019. Richard Vann accessed the storage unit with Adrianna Vann. Narcotics agents conducted a exterior check and could smell an odor of marijuana coming from inside.
c.  April 26, 2019. Richard Vann accessed the storage unit. After Richard accessed the unit, narcotics agents inspected the exterior of the storage unit and could smell a strong odor of marijuana coming from the inside.
d.  April 29, 2019. Richard Vann accessed the storage unit.

6.  Once it was determined who established residency at 27403 Trinity Cross, and that Richard Vann did possess a storage unit, periodic surveillance was conducted to monitor his activities for any drug activity. The following occasions were reasonably suspicious and consistent with drug dealing:

a.  April 30, 2019. Vann was observed at the HEB parking lot, located at 23635 Wilderness Oak, San Antonio, TX. While in the parking lot, an unknown male walked from the wooded area and entered the back passenger side of the vehicle. A short time later, Vann drove away, dropping the unknown male off in the parking lot. Surveillance video also captured this incident.
b.  May 1, 2019. Vann was observed at 6000 Randolph Blvd (Amberton Apartments) near building 6, where he met with an unknown person briefly outside his vehicle.
c.  May 1, 2019. Vann was observed at the Randolph Food Mart, located at 6162 Randolph Blvd, where he met with an unknown male on the side of the building briefly.
d.  May 2, 2019. Vann was observed at the Walmart parking lot, located at 1515 North Loop 1604 East. An unknown male entered the backseat of his vehicle briefly then left. Surveillance video also captured this transaction.  ? WHAt transaction
e.  May 4, 2019. Vann parked at 9000 block of Oceanview Dr., where he met with an unknown person briefly before leaving.
f.  May 5, 2019. Vann parked at the Daquiri Lounge, located at 8275 FM 78, where he met with an unknown person briefly before leaving.
g.  May 6, 2019. Vann parked at the Village Parkway Automotive, located 8509 Culebra Rd, where he met with several males, including one named Shyheim Manning. Vann was observed making an apparent marijuana drug deal with Manning. To further investigate, police officers contacted Richard Vann and found him possession of high-grade marijuana, 10 grams of Tetrahydrocannibinol (THC) extract, and illegal prescription pills. Manning was also in possession of marijuana and an AR-15 assault rifle. THC is the main psychoactive ingredient in marijuana, which can be extracted from the plant through a chemical process, creating a sticky, oily, highly

| Officer Making Report (Badge No )<br>A. Garcia #2362 | Approving Authority<br>K. Williamson 3382 | Unit Case No<br>SAPD19095314 | Unit Assigned to Follow -up<br>Narcotics |
| --- | --- | --- | --- |

| **SAN ANTONIO**<br>**POLICE DEPARTMENT** | **TYPE ONLY** | **SUPPLEMENTARY REPORT**<br>SAPD Form 3-L Rev. (Sep-00)<br>004 |
| --- | --- | --- |

PAGE 5 of 6     **SAN ANTONIO POLICE DEPARTMENT**     **CASE NUMBER: SAPD19095314**

POSS W/I DEL CS PG 1, 4-200 grams
POSS W/I DEL CS PG 2 4-400 grams
POSS Marijuana 5-50 pounds

| Last name of Complainant, First, Middle Initial | Address of Complainant | Phone Number |
|---|---|---|
| Det. A. Garcia #2362 | 315 S. Santa Rosa | 210-207-2470 |

| Place of Occurrence-Street on- at or Number | Dist. Occurrence | Date & Time of Occurrence | Date and Time of this Report |
|---|---|---|---|
| 27403 Trinity Cross | Bexar Co. | 05/06/2019 1:40 pm | 05/15/2019 08:00 am |

Additional Detail of Offense-Progress of Investigation-Disposition of Evidence, Property, Etc...

concentrated substance. Because of its concentration, THC has a much higher potency than marijuana. THC extract is listed as a Penalty Group 2 controlled substance in the Texas Health and Safety Code.

7. Based on the probable cause set out in paragraphs 1-6, a search warrant was applied for to search Richard Vann's residence, 27403 Trinity Cross, for Tetrahydrocannibinol (THC) extract, and/or related paraphernalia, which would further constitute evidence that he was in possession of a PG2 substance. The search warrant was granted by Municipal court Judge Michael Ramos (warrant log #191662). Forced entry was made into the residence, causing damage to the front door and frame. The following items were discovered within the residence:

a. Approximately 11.5 pounds of high-grade marijuana. The marijuana was in Richard Vann's bedroom closet.
b. Approximately 21.7 grams of MDMA (ecstasy pills). The MDMA was in Richard Vann's bedroom. MDMA is listed as a Penalty Group 2 controlled substance in the Texas Health and Safety Code. Positive field test.
c. Approximately 124.3 grams of hashish. The hashish was in Richard Vann's bedroom. Hashish is a highly concentrated derivative of marijuana, listed as a Penalty Group 2 controlled substance in the Texas Health and Safety Code. Positive field test.
d. Approximately 3.9 grams of cocaine. The cocaine was in Richard Vann's bedroom. Cocaine is listed as a Penalty Group 1 controlled substance in the Texas Health and Safety Code. Positive field test.
e. Approximately 4 grams of Methamphetamine. The Methamphetamine was in Richard Vann's bedroom. Methamphetamine is listed as a Penalty Group 1 controlled substance in the Texas Health and Safety Code. Positive field test.
f. Approximately 127 grams of THC extract. The THC extract was in kitchen refrigerator.
g. Approximately 1.2 grams of marijuana. The marijuana was in Adrianna Vann's bedroom.
h. Approximately 0.5 grams of THC extract in a vape cartridge. The vape cartridge was in Adrianna Vann's nightstand drawer
i. Approximately 161.8 grams of marijuana. The marijuana was in Dallas Vann's bedroom. It was recognized as marijuana through narcotics agent's training and experience.
j. Approximately 5.1 grams of THC extract. The THC extract was in Dallas Vann's bedroom.
k. Approximately 47 grams of THC extract in vape cartridges. The THC vape cartridges were in Dallas Vann's bedroom. Vape cartridges are devices used to hold THC extract for consumption through inhalation.
l. Glock Model 17, 9mm semi-automatic handgun, serial # BBVL330. The handgun was in Richard Vann's bedroom, on the floor, next to headboard.
m. $71,225 dollars in US currency. ($61,225 was concealed in the lining of a bench at the foot of the bed in Adrianna Vann's bedroom, $2,000 was in Adrianna Vann's nightstand drawer, $7,000 was in Dallas Vann's bedroom and $1,000 was in Richard Vann's bedroom).
n. Other evidence, to include 2 cellular phones, owned by Richard Vann and 2 laptop computers were seized for further investigation.

| Officer Making Report (Badge No ) | Approving Authority | Unit Case No | Unit Assigned to Follow -up |
|---|---|---|---|
| A. Garcia #2362 | K. Williamson 3382 | SAPD19095314 | Narcotics |

| SAN ANTONIO POLICE DEPARTMENT | TYPE ONLY | SUPPLEMENTARY REPORT SAPD Form 3-L Rev. (Sep-00) |
|---|---|---|

EXHIBIT 'G' 2895

| | |
|---|---|
| THE STATE OF TEXAS | * |
| | * |
| COUNTY OF BEXAR | * |

## **AFFIDAVIT**

On this date appeared before me, and after being placed under oath affirmed the truth of the following:

"My name is <u>NEIL CALFAS</u>. I am over the age of 18 years, of sound mind, and personally acquainted with the facts stated in this affidavit.

" I was retained, together with co-counsel ROBBIE WARD, as the attorney of record in federal court by RICHARD MICHAEL VANN, JR., in Cause No 20CR061(OLG). The Federal Public Defenders Office had been representing Mr. Vann before Robbie Ward and I had signed onto the case. At the time of our legal representation, the COVID-19 pandemic was in full swing and caused extraordinary measures to be taken to avoid transmissibility. During this time, the Courts were not conducting in person hearings, the defendants were not being transported, and the attorneys were not visiting the defendants in custody. As a result, most attorney client communications were on the telephone and some were on a video conference. At the time of the Defendant's plea of guilty, the Defendant had never met Robbie Ward or myself in person. Prior to the Defendant's plea, we had discussed the evidence against the Defendant and his previous cooperation. We discussed the reports and documents we were provided by the prosecutor. After the plea it became known that additional evidence existed or should of existed that was not considered or taken into consideration at the time of the plea. Prior to the plea, neither one of us ever actually showed, mailed, or in any manner physically provided to the Defendant, the police



reports, nor the search warrant affidavits. We read the Defendant the reports that were provided by the Government, however, as previously stated, the Defendant did not get the opportunity to personally read the same. In addition, we did not discuss with him all issues regarding the search of his vehicle, nor the filing of a Motion to Suppress the search of the vehicle, nor to filing a motion to suppress regarding any deficiencies in the search warrant affidavits for the residence or the shed. At some point after the plea, the Defendant reviewed the actual discovery including the police reports and the search warrant affidavits. Thereafter, Mr. Vann requested that we file a motion to withdraw his plea because he wanted to challenge the legality of the searches of his vehicle, his residence, and his storage shed. I advised him that I did not believe this was in his best interest, but as he persisted in this option, Mr. Vann wanted new counsel, and we decided to file a motion to withdraw as his attorneys of record, once he was able to obtain new counsel. I was unable to provide the Defendant sufficient counsel because I did not have all the available relevant information and discovery, and newly discovered evidence, at the time I had him sign his plea agreement."

_Neil Calfas_

Affiant, Neil Calfas

SUBSCRIBED AND SWORN TO ON THIS THE 4th DAY OF January, 2022.

NOTARY PUBLIC STATE OF TEXAS
EXPIRES: 5-14-22

Alexis Alderete
My Commission Expires
05/14/2022
ID No. 131567080